UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JAMES SERVEDIO,

       Plaintiff,

 -v-                                                                  No. 20-CV-3907-LTS-SDA

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

       Defendant.

-------------------------------------------------------x

## Memorandum Order

       Plaintiff James Servedio ("Plaintiff") brings this action against Travelers Casualty Insurance Company of America ("Defendant") seeking a declaratory judgment determining that his business income losses during the COVID-19 pandemic are covered by the all-risk insurance policy entered into by the parties, which provides coverage for business interruption losses. (See docket entry no. 14 (Second Amended Complaint, "SAC") ¶¶ 1-4, 8-12.) Before the Court is Defendant's motion (docket entry no. 19) to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (See also docket entry no. 20 ("Def. Mem.").) The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1332. The Court has carefully reviewed all of the parties' submissions and, for the following reasons, grants Defendant's motion to dismiss the SAC in its entirety.

## Background

       The following facts are alleged in the SAC and are presumed true for the purposes of this motion practice. Plaintiff owns a "live event sound and stage business" in New York.

(SAC ¶¶ 2, 8.)  The Policy, issued to Plaintiff by Defendant, covers business interruption losses from September 7, 2019, to September 7, 2020.  (Id. ¶ 8; id., Exh. 1 (the "Policy"), at 5.)[1]  The SAC concerns three provisions of the Policy.  First, the Policy provides coverage for business income losses and extra expenses incurred during a suspension of business operations that is caused by "direct physical loss of or damage to" the insured property that results from "a Covered Cause of Loss" (hereinafter "the Insured Property Provision").  (Policy at 16-17.)  Second, the Policy provides coverage for business income losses and extra expenses resulting from a "Covered Cause of Loss" which causes "direct physical loss or damage at the premises of a Dependent Property," defined as "property operated by others whom you depend on to":

> (a) Deliver materials or services (other than "water supply services", "communication supply services" or "power supply services") to you, or to others for your account (Contributing Locations);
>
> (b) Accept your products or services (Recipient Locations);
>
> (c) Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or
>
> (d) Attract customers to your business (Leader Locations).

(hereinafter "the Dependent Property Provision").  (Id. at 27-28.)  Finally, the Policy provides coverage for business income losses and extra expenses incurred when access to the insured premises is prohibited by a civil authority action taken due to "direct physical loss of or damage to property" at other properties within a 100-mile radius of the insured property caused by a "Covered Cause of Loss" (hereinafter "the Civil Authority Provision").  (Id. at 29.)

---

[1]  A full copy of the Policy is attached as Exhibit 1 to the SAC and is considered a part of the SAC for the purposes of this motion.  See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (documents attached to a complaint are part of the complaint upon a motion to dismiss).  Page references to the Policy refer to its ECF page numbers.

The Policy defines "Covered Causes of Loss" as "risks of direct physical loss unless the loss is . . . [l]imited . . . or . . . [e]xcluded." (Policy at 17-18.) Among the Policy's exclusions is an endorsement titled "Exclusion of Loss Due to Virus or Bacteria," which "applies to all coverage . . . including but not limited to . . . property damage . . . and forms or endorsements that cover business income, extra expense, rental value or action of civil authority" (hereinafter "the Virus Exclusion Clause"). (Id. at 100.) The Virus Exclusion Clause states, in relevant part, "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Id.)

In March 2020, in response to the COVID-19 pandemic, Governor Cuomo declared a "State of disaster Emergency" for the state of New York and issued a stay-at-home order ("the Executive Order") that required non-essential workers to stay at home. (SAC ¶¶ 52-55.) As a result of the stay-at-home order, "Plaintiff's live event sound and stage business [was] unable to operate." (Id. ¶ 56.) Plaintiff subsequently submitted an informal claim to Defendant seeking coverage, but was informed that the claim would be futile because "Plaintiff did not suffer physical damage to its property" and because of the Virus Exclusion Clause. (Id. ¶¶ 11-12.) Plaintiff now seeks a judgment declaring that Plaintiff is entitled to coverage for the business interruption losses he experienced as a result of the COVID-19 pandemic and the Executive Order. (Id. at 15-16.)

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of

action; a complaint must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts as true the nonconclusory factual allegations in the SAC and draws all reasonable inferences in Plaintiff's favor. See Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

"The initial interpretation of a contract is a matter of law for the court to decide." Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (citation omitted). Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract" and "[w]hen the provisions are unambiguous and understandable, courts are to enforce them as written." Id. (citations omitted).[2] Ambiguity exists where the "terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (citation and internal quotation marks omitted). "[T]he issue of whether a provision is ambiguous is a question of law," and "focuses on the reasonable expectations of the average insured upon reading the policy." Hansard v. Federal Ins. Co., 46 N.Y.S.3d 163, 166 (2d Dep't 2017) (citations and internal quotation marks omitted).

New York law also provides that "a policyholder bears the initial burden of showing that the insurance contract covers the loss." Roundabout Theatre Co. v. Continental

---

[2]  Since the Policy was contracted in New York (SAC ¶ 6), New York law applies. See 82-11 Queens Blvd. Realty, Corp. v. Sunoco, Inc. (R & M), 951 F. Supp. 2d 376, 381 (E.D.N.Y. 2013) ("[A] contract executed in New York and litigated in a district court sitting in New York while exercising diversity jurisdiction must be interpreted pursuant to New York law.").


Cas. Co., 751 N.Y.S.2d 4, 6 (1st Dep't 2002) (citing Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000)).  If the insured demonstrates coverage, an exclusion applies where the insurer establishes that the "exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Incorporated Village of Cedarhurst v. Hanover Ins. Co., 653 N.Y.S.2d 68, 70 (1996) (citation omitted); see also Certain Underwriters at Lloyd's, London v. Convergys Corp., No. 12-CIV-8968-CRK, 2014 WL 3765550, at *2 (S.D.N.Y. Mar. 25, 2014) ("the insurer bears the burden of proof to demonstrate that the exclusion applies") (citation omitted); Pavarini Const. Co., Inc. v. Continental Ins. Co., 759 N.Y.S.2d 56 (1st Dep't 2003) (affirming grant of insurer's motion to dismiss the complaint based on a policy exclusion).

In this case, even assuming arguendo that the SAC plausibly alleges that the virus that causes COVID-19 could cause physical loss of or damage to property relevant to the Policy, the Court concludes that the SAC must still be dismissed because the Virus Exclusion Clause unambiguously excludes from coverage the losses and damages alleged in Plaintiff's pleading.[3]

In unmistakable language, the Policy's Virus Exclusion Clause clearly defines the type of virus to which the exclusion applies: coverage is excluded for losses resulting from "any virus . . . capable of inducing physical distress, illness or disease."  (Virus Exclusion Clause.) No other limitations are described,[4] and the Court cannot give effect to the parties' intent or their

---

[3]  See, e.g., 100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am., No. 20-CV-8452 (JMF), 2021 WL 2333244, at *2 (S.D.N.Y. June 8, 2021) ("[T]he Court need not and does not decide" the question whether "the physical presence of COVID-19 does not constitute property loss or damage within the meaning of insurance policies like the one here" "because the Policy contains a Virus Exclusion Clause that independently and unambiguously bars coverage of Orchard Street's business losses at issue.").

[4]  Plaintiff argues that "[t]he plain language of the Policy exclusion clearly contemplates scenarios involving temporary contamination of a property, such as with E. coli,

bargained-for balance of risks and benefits if it "infer[s] obstacles to exclusion where none appear in the Policy." RSUI Indem. Co. v. RCG Grp. (USA), 890 F. Supp. 2d 315, 327 (S.D.N.Y. 2012), aff'd, 539 F. App'x 3 (2d Cir. 2013). "In fact, at least [seven] courts, including [two] in this District, have granted motions to dismiss filed by Defendant or its affiliates that involve the exact same Virus Exclusion." WM Bang LLC v. Travelers Cas. Ins. Co. of Am., No. 20-CV-4540-KMK, 2021 WL 4150844, at *6 (S.D.N.Y. Sept. 13, 2021) (collecting cases); see also 100 Orchard St., 2021 WL 2333244, at *2. Accord Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 894 (9th Cir. 2021) (concluding that a comparable virus exclusion clause barred coverage for business income losses).

Plaintiff argues that a "reasonable reading of the [Virus Exclusion Clause] language by a layman would not suggest that a pandemic, or civil authority Orders issued to combat a pandemic, are excluded" from coverage because the Virus Exclusion Clause does not explicitly include the word pandemic. (Pl. Mem. at 16.) However, the Virus Exclusion Clause is written in broad, inclusive terms, and Plaintiff has not identified any portion of the Virus Exclusion Clause that could reasonably be read to narrow the scope of that provision to exclude pandemic-level viral spread. See Hastings Development, LLC v. Evanston Insurance Company, 701 Fed. App'x 40, 42 (2d Cir. 2017) (stating that, under New York law, "[a]mbiguity does not exist simply because the parties urge different interpretations") (quoting Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 616 (2d Cir. 2001)) (internal quotation marks omitted); 100 Orchard, 2021 WL 2333244, at *2 ("[I]n the context of a viral pandemic, 'the word

---

salmonella, or listeria bacteria in milk, which are relatively common" and that the Virus Exclusion Clause "does not contemplate a worldwide pandemic of a novel coronavirus that results in statewide shutdown orders." (Docket entry no. 24-1 ("Pl. Mem.") at 15.) Plaintiff does not cite any portion of the Virus Exclusion Clause as support for this limitation, and the Court declines to infer such a baseless limitation into the provision.

"pandemic" describes a disease's geographic prevalence'; 'it does not replace disease as the harm-causing agent.'") (quoting Boxed Foods Co., LLC v. California Cap. Ins. Co., 497 F. Supp. 3d 516, 523 (N.D. Cal. 2020), as amended (Oct. 27, 2020)); Island Gastroenterology Consultants, PC v. Gen. Cas. Co. of Wisconsin, 150 N.Y.S.3d 898 (N.Y. Sup. Ct. Suffolk Co. 2021) ("plaintiffs' claimed losses fall squarely within the policies' virus exclusion").[5]

Furthermore, the Policy's unambiguous Virus Exclusion Clause applies to the damages and losses alleged in the SAC. The Virus Exclusion Clause "applies to all coverage under all forms and endorsements" within the Policy—and specifically lists the types of coverage alleged to apply, "business income . . . or action of civil authority"—and operates to exclude "loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." (Id.; see also docket entry no. 25 ("Reply") at 4-5.) Plaintiff alleges that COVID-19 is a virus capable of causing disease (see, e.g., SAC ¶¶ 42-43, 61, 69), and that it caused the damage that resulted in Plaintiff's losses. (See id. ¶ 39 ("Plaintiff's customers' properties suffered property damage from COVID-19, and this affected Plaintiff's business."); ¶ 57 ("The Orders in and around Plaintiff's place of businesses also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property."); ¶ 73 ("Contamination and damage to Plaintiff's Insured Properties and surrounding property

---

[5] Plaintiff points to a Circular distributed by the Insurance Services Office ("ISO") in connection with the approval of the Virus Exclusion Clause, arguing that it only "contemplates scenarios involving temporary contamination of a property" and "does not contemplate a worldwide pandemic of a novel coronavirus that results in statewide shutdown orders." (Pl. Mem. at 6, 15.) Because the Court concludes that the Virus Exclusion Clause is unambiguous, it does not consider parol evidence offered to contradict the clear meaning of that clause. See Sher v. Allstate Ins. Co., 947 F. Supp. 2d 370, 389 (S.D.N.Y. 2013) ("The parol evidence rule bars consideration of extrinsic evidence to contradict an otherwise unambiguous insurance provision.") (citing Metro-North Commuter R. R. Co. v. Yonkers Contr. Co., 680 N.Y.S.2d 537, 538 (1st Dep't 1998)) (emphasis added).

caused by the Coronavirus constitute 'direct physical loss'").) Because the SAC alleges that Plaintiff's business was interrupted by COVID-19 and that the virus caused the damages and losses complained of, the Virus Exclusion Clause "applies in th[is] particular case." Incorporated Village of Cedarhurst, 653 N.Y.S.2d at 70.[6]

The Court reaches its conclusion notwithstanding Plaintiff's argument that the Virus Exclusion Clause does not apply to losses that "were not solely caused by a virus" (SAC ¶ 37), and that, since Plaintiff's "losses were also caused by the entry of Civil Authority Orders" to mitigate the spread of COVID-19, the Virus Exclusion Clause does not apply. (Id.; see also id. ¶¶ 52-54, 56.) Plaintiff argues that the Virus Exclusion Clause applies only to the "actual damage caused by a virus, not every event in a causal chain leading back to a virus" because such an "unlimited view of causation would produce absurd results." (Pl. Mem. at 13-14.) However, "a reasonable business person would plainly contemplate that an exclusion for losses 'caused by or resulting from any virus,' would extend to losses caused by immediate efforts to mitigate a viral outbreak," Broadway 104, LLC v. XL Ins. Am., Inc., No. 20-CV-3813 (PKC), 2021 WL 2581240, at *6 (S.D.N.Y. June 23, 2021) (quoting 100 Orchard St., 2021 WL 2333244, at *2, and applying New York's "efficient proximate cause" test), and Plaintiff concedes that the State of New York, like other government entities, "issued a stay at home order . . . as a result of COVID-19." (SAC ¶ 54.) Accord WM Bang, 2021 WL 4150844, at *6 n.4 (rejecting argument that a virus exclusion clause did not apply because the "legal proximate

---

[6] Because Defendant has shown that the damages and losses alleged in the SAC resulted from the COVID-19 virus, Defendant has met its burden of demonstrating that the Virus Exclusion Clause applies. See Maurice Goldman & Sons, Inc. v. Hanover Ins. Co., 80 N.Y.2d 986, 987-88 (1992) ("While it is true that an insurer generally has the burden of proving that a loss is within the scope of a policy exclusion . . . defendants satisfied that burden here by simply showing that plaintiff's claim concededly involved" the unambiguously excluded cause of loss) (emphasis omitted).

cause of the physical loss here was not a virus, but the New York Civil Authority Orders," and collecting cases).  See also Chattanooga Pro. Baseball LLC v. Nat'l Cas. Co., No. 20-17422, 2021 WL 4493920, at *3 (9th Cir. Oct. 1, 2021) (rejecting a similar causation argument under the laws of ten states).

Accordingly, the Virus Exclusion Clause unambiguously applies to Plaintiff's alleged damages and losses and therefore, COVID-19 and the governmental orders issued in response to the pandemic are not Covered Causes of Loss under the Policy.  The SAC therefore fails to state a claim upon which relief can be granted.[7]

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is granted in its entirety.

The Clerk of Court is respectfully requested to terminate docket entry no. 19, to enter judgment accordingly, and to close this case.

SO ORDERED.

Dated: New York, New York
       December 6, 2021

    /s/ Laura Taylor Swain
    LAURA TAYLOR SWAIN
    Chief United States District Judge

---

[7] The Court declines apply the doctrine of regulatory estoppel (see Pl. Mem. at 16), which generally estops a party from making an assertion contrary to one made previously in an administrative proceeding.  See Employers Ins. Co. of Wausau v. Duplan Corp., No. 94-CIV-3143-CSH, 1999 WL 777976, *12 (S.D.N.Y. Oct. 20, 1999).  Courts in this Circuit interpreting New York law have repeatedly rejected the doctrine in the context of clear policy language, holding that parol evidence cannot "contradict an otherwise unambiguous insurance provision."  Sher, 947 F. Supp. 2d at 389 (rejecting cause of action based on regulatory estoppel because of the parol evidence rule) (citing Metro-North, 680 N.Y.S.2d at 538) (emphasis added).  "As such, the Court declines to apply the doctrine of regulatory estoppel here."  WM Bang, 2021 WL 4150844, at *6 n.5 (rejecting the same argument).